R. W. SAWANT & CO., Plaintiff,

v.

BEN KOZLOFF, INC., Standard Chartered Bank, Ltd., Bayly, Martin and Fay, Inc., and International Adjusters, Ltd., Defendants.

No. 80 C 2438.

United States District Court,
N. D. Illinois, E. D.

Jan. 30, 1981.

Myron M. Cherry, Cherry, Flynn & Kanter, Chicago, Ill., for plaintiff.

J. Samuel Tenenbaum, Becker & Tenenbaum, Ronald G. Zamarin, William P. Suriano, Isham, Lincoln & Beale, Robert A. Knuti, Lord, Bissell & Brook, Brian C. Powers, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on defendants' motions to dismiss. For the

reasons set forth below, defendants' motions to dismiss are granted.

The complaint alleges, *inter alia*, the following. Plaintiff and defendant Ben Kozloff, Inc. ("Kozloff"), an Illinois corporation, entered into an agreement whereby plaintiff would export approximately four container loads of India shrimp to the United States for Kozloff's account, Kozloff would open irrevocable letters of credit on plaintiff's behalf covering the value of the shrimp to be shipped by plaintiff, in the event the shrimp was not admitted into the United States by the Food and Drug Administration (the "FDA") the merchandise would be returned to plaintiff or re-exported by Kozloff on plaintiff's behalf, and Kozloff would obtain insurance protecting plaintiff against the risk that the FDA would not admit the shrimp into the United States. Pursuant to the agreement, letters of credit were opened by Kozloff through defendant Standard Chartered Bank, Ltd. ("Standard"), a corporation doing banking business in Illinois, and Kozloff obtained the insurance coverage through defendant Bayly, Martin and Fay, Inc. ("Bayly"), a corporation doing business in Illinois as an insurance agency. Plaintiff exported 2,816 cartons of shrimp with a declared value of $311,693 and Kozloff made a partial downpayment in the amount of $49,280. Cartons of shrimp with a value of $55,112.80 were allowed to enter the United States. Kozloff, through Standard, Bayly and International Adjusters, Ltd. ("International"), a corporation doing business in Illinois as a salvor of distress cargo, arranged for a salvage sale of the detained cartons of shrimp for the purposes of re-export. Kozloff purchased all of the shrimp sold at the salvage sale and re-exported it to Rotterdam. As a result, plaintiff contends that Kozloff breached its contract with plaintiff; that Standard breached its fiduciary obligations to plaintiff; that plaintiff is the third-party beneficiary of a contract of insurance between Kozloff and Bayly and, therefore,

that Bayly is liable to plaintiff for the full amount of any insurance proceeds; that International refuses to deliver to plaintiff the proceeds of the salvage sale; that defendants have converted the shrimp; and that Kozloff fraudulently concealed facts from plaintiff.

All defendants move that the action be dismissed on the ground that the court lacks subject matter jurisdiction because diversity of citizenship is lacking and because the case does not arise under federal law. International also moves to dismiss on the ground that venue is improper and that service of process was insufficient. Kozloff also moves to dismiss on the grounds that plaintiff has failed to join a party under rule 19, Fed.R.Civ.P., and that plaintiff has failed to state a claim upon which relief can be granted.

Defendants contend that diversity of citizenship does not exist because plaintiff is a corporation with its domicile and principal place of business in Bombay, India and Standard is incorporated under the laws of the United Kingdom and its principal place of business is in London, England. Plaintiff contends that where a corporation does substantial business in the United States or where the action involves substantial business transactions in the United States or property under the constructive control of the court, the court should focus on those activities in determining whether diversity exists and that since both federal and state statutes require foreign banks to be treated in the same way as domestic banks, Standard should be considered an Illinois corporation for purposes of determining diversity jurisdiction.

■ 28 U.S.C. § 1332(a) grants federal courts jurisdiction over suits between citizens of a state and citizens or subjects of a foreign state and citizens of different states and in which citizens or subjects of a foreign state are additional parties.[1] The fed-

---

1. 28 U.S.C. § 1332(a) provides:

   The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
   
   (1) citizens of different States;

eral courts consistently have found jurisdiction lacking, however, when there are alien parties on both sides of the controversy and when an alien is opposed to a citizen of a state and another alien. 1 Moore's Federal Practice ¶ 0.75[1.–2], at 709.6–709.7 (2d ed. 1980); Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3604, at 607–608 (1975). Since both plaintiff and Standard are alien corporations, it is necessary to determine whether Standard can be deemed a citizen of a state of the United States.

■ 28 U.S.C. § 1332(c) provides in pertinent part:

> For the purposes of this section ..., a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business ....

Most courts have held that section 1332(c) does not apply to foreign corporations and, therefore, that an alien corporation is considered a citizen for purposes of diversity jurisdiction solely of the foreign state in which it is incorporated. 1 Moore's Federal Practice ¶ 0.75[3], at 709.81 (2d ed. 1980); Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3628, at 823–825 (1975). Therefore, if the court follows the general rule, Standard is considered a subject of Great Britain and diversity jurisdiction is lacking.

Even if section 1332(c) applied to alien corporations, it is unclear whether it refers to the corporation's business on a world-wide basis or to the state in the United States where its principal place of business is conducted. 1 Moore's Federal Practice ¶ 0.75[3], at 709.83 (2d ed. 1980); Wright,

Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3628, at 825–827 (1975). If the court looked to Standard's business on a world-wide basis, Standard still would be considered a subject of Great Britain. If the court looked to Standard's business in the United States, it would have to determine whether Standard's principal place of business was in New York, Illinois, Florida, Texas or Washington. If section 1332(c) applies to alien corporations, the better approach is to consider a foreign corporation a citizen of the foreign state in which it is incorporated and the state or foreign state where it has its principal place of business. *Id.* Under this approach, since Standard is incorporated in Great Britain and its principal place of business is located in London, it should be considered a subject of Great Britain for diversity purposes. Therefore, complete diversity does not exist between plaintiff and all defendants.

■ The federal and state statutes relied upon by plaintiff do not require the court to conclude otherwise. First, plaintiff contends that under section 9(b) of the International Banking Act of 1978, 12 U.S.C. § 3106a, foreign banks doing business in the United States, such as Standard, must be treated in the same way as domestic banks and, therefore, that Standard should not be permitted to use the technical label of "alien" to escape jurisdiction. Section 9(b) is not a jurisdictional grant.[2] Rather, it requires, *inter alia*, every branch of a foreign bank conducting operations in the United States to comply with any federal or state law which applies to national banks or state-chartered banks.[3] Since national

---

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

2. Plaintiff cites, in support of its position, the legislative history of the International Banking Act of 1978, S.Rep.No. 95–1073, 95th Cong., 2d Sess. 1421 (1978), U.S.Code Cong. & Admin. News 1978, p. 1421, and refers the court to section 9(b) of that Act as an example. Section

9(b) was added to the International Banking Act of 1978 by the Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub.L.No. 95–630, § 311, 92 Stat. 3641, 3678. Nothing in the legislative history of the Financial Institutions Regulatory and Interest Rate Control Act of 1978, H.R.Rep.No. 95–1383, 95th Cong., 2d Sess. 9273 (1978), U.S.Code Cong. & Admin.News 1978, p. 9273, indicates that section 9(b) is a jurisdictional grant.

3. 12 U.S.C. § 3106a provides in pertinent part:

(1) Every branch or agency of a foreign bank ... shall conduct its operations in the

banking associations are, pursuant to 28 U.S.C. § 1348, deemed citizens of the states in which they are located,[4] plaintiff argues that Standard must be deemed a citizen of Illinois. Section 1348 undermines, rather than supports, plaintiff's argument. If Congress had intended section 1348 to encompass foreign banks like Standard, it would have amended that section in either the International Banking Act of 1978 or the Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub. L.No. 95–630, §§ 101–921, 92 Stat. 3641–3741, which added section 9(b). Therefore, the International Banking Act of 1978 does not subject foreign banks to federal diversity suits where the plaintiff is an alien also.

Second, plaintiff contends that according to section 3 of the Foreign Banking Office Act, Ill.Rev.Stat. ch. 16½, § 503, and section 5 of the Illinois Banking Act, Ill.Rev.Stat. ch. 16½, § 105, Standard must be considered an Illinois resident. Section 3 of the Foreign Banking Office Act permits foreign banks to conduct banking business in Illinois with the same rights and privileges as Illinois banks and subject to the same duties, restrictions, penalties and liabilities imposed by the Illinois Banking Act, Ill. Rev.Stat. ch. 16½, §§ 101–182, upon Illinois banks.[5] Section 5 of the Illinois Banking Act states that banks organized under the Act have the power, *inter alia*, to sue and be sued and to complain and defend in their corporate name.[6] Section 3 of the Foreign Banking Office Act and section 5 of the Illinois Banking Act subject foreign banks to the jurisdiction of the Illinois courts. They have nothing to do with the criteria for diversity jurisdiction. Therefore, Standard is not considered an Illinois resident for purposes of diversity and diversity of citizenship is lacking.

■ If subject matter jurisdiction is found to be lacking, plaintiff asks the court to dismiss Standard and not the entire cause of action. When the party whose presence would destroy jurisdiction is not indispensable, it may be possible for plaintiff to have the action dismissed as to that party and thereby preserve diversity of citizenship. However, where a party is proper, as, for example, a joint tortfeasor, and in fact has been joined, that party's citizenship must be considered. Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3606, at 627 (1975). Here count two, which alleges breach of fiduciary duty, and count five, which alleges conversion, concern Standard. Therefore, the court deems it appropriate to dismiss the entire action if federal question jurisdiction is not present.

■ Defendants contend that the case does not arise under federal law because the requirements of 12 U.S.C. § 632 have not been alleged, *i. e.*, a corporation organized under the laws of the United States and an action arising out of a transaction involving international banking. Plaintiff

---

United States in full compliance with provisions of any law of the United States or any State thereof which—

.      .      .      .      .

(B) apply to national banks or State-chartered banks doing business in the State in which such branch or agency . . . is doing business.

**4.** 28 U.S.C. § 1348 provides in pertinent part:
All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.

**5.** Section 3 of the Foreign Banking Office Act provides in pertinent part:
Upon receipt of a certificate of authority under this Act, a foreign banking corporation

may conduct its banking business in this State with the same, but no greater, rights and privileges as a State bank, and except as otherwise provided in this Act, subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed under the Illinois Banking Act upon a State bank.

**6.** Section 5 of the Illinois Banking Act provides in pertinent part:
A bank organized under this Act or subject thereto shall be a body corporate and politic and shall, without specific mention thereof in the charter, have all the powers conferred by this Act and the following additional general corporate powers:
(1) To sue and be sued, complain and defend in its corporate name.

contends that each of the defendants is a corporation organized under the laws of the United States and that, when section 632 is read in conjunction with the International Banking Act of 1978, all international banking transactions come within the jurisdiction of the court.

Under 12 U.S.C. § 632 all suits which have a corporation organized under the laws of the United States as a party and which arise out of transactions involving international or foreign banking are deemed to arise under the laws of the United States and district courts have original jurisdiction of all such suits.[7] 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

First, the court does not agree that all defendants are corporations organized under the laws of the United States. Sections 611 through 614 of title 12 of the United States Code provide for the organization of corporations to do international or foreign banking. These sections are very similar to provisions of state banking acts, *see e. g.*, sections 7 through 13 of the Illinois Banking Act, Ill.Rev.Stat. ch. 16½, §§ 107–113. Thus, banks are organized under either state or federal law and section 632 is to be read literally. Since all defendants other than Standard are organized under state laws and since Standard is not organized under federal law, this suit does not involve a "corporation organized under the laws of the United States."

Second, 12 U.S.C. § 632 does not apply through section 9(b) of the International Banking Act of 1978. Section 9(b) requires, *inter alia*, every branch of a foreign bank to conduct its operations in the United States in full compliance with any federal law which applies to national banks.[8] 12 U.S.C. § 632 is not a substantive provision but a grant of jurisdiction.[9] If a branch of a foreign bank should fail to comply with a federal law applicable to national banks, then the action would arise under the laws of the United States and jurisdiction would be proper under 28 U.S.C. § 1331. Since plaintiff has not alleged that Standard has failed to comply with a substantive federal law applicable to national banks, a federal question is lacking.

Accordingly, defendants' motions to dismiss are granted.[10]

It is so ordered.

---

**7.** 12 U.S.C. § 632 provides in pertinent part:
Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits. . . .

**8.** See note 3 *supra*.

**9.** This conclusion does not immunize Standard as plaintiff suggests. Plaintiff's remedy may be to sue Standard in state court.

**10.** Since the court has concluded that it lacks subject matter jurisdiction, it need not consider the other issues raised by International and Kozloff.